United States District Court
Southern District of Texas
**ENTERED**
April 11, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| JOSE DE ANDA, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 7:17-CV-224 |
| | § | |
| COVINGTON SPECIALTY INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

## ORDER GRANTING DEFENDANT COVINGTON SPECIALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

## I.    Background

Now before the Court is remaining Defendant Covington Specialty Insurance Company's ("Covington") Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56, seeking summary judgment on all of Plaintiffs Jose De Anda and Elvira De Anda's claims against it. (Dkt. No. 18).[1] Plaintiffs' Original Petition, their live pleading, alleges that they own residential properties, located at 610 W. 3rd St. and 300 N. Nicolson Ave in Mission, Texas, that are covered by an insurance policy issued by Covington. (Dkt. No. 1-3, Exh. C-1). After the properties sustained covered losses resulting from a hail and/or wind storm occurring on or about March 26, 2015, Plaintiffs made a claim under the policy for the damages sustained. *Id.*

---

[1]  Plaintiffs initially sued Covington and Brian Wilson, the individual adjuster assigned to Plaintiffs' claim under their insurance policy with Covington, and Covington removed the case on the grounds that the Court had diversity jurisdiction over the action absent the improper joinder of Wilson. (Dkt. No. 1; Dkt. No. 1-3, Exh. C-1). Plaintiffs moved to remand the action to state court on the sole basis that the amount in controversy did not meet the federal jurisdictional minimum, but the Court rejected Plaintiffs' argument in its order entered on January 5, 2018, finding that Plaintiffs' pleading at the time of removal placed more than $75,000 in controversy, and that Plaintiffs' post-removal stipulation did not deprive the Court of diversity jurisdiction. (Dkt. Nos. 4, 17). As Plaintiffs did not dispute Wilson's improper joinder, the Court dismissed him from the suit and denied Plaintiffs' motion to remand, and now exercises diversity jurisdiction over Plaintiffs' remaining claims against Covington. *See id.*

Dissatisfied with the adjustment and handling of the claim, Plaintiffs filed suit against Covington for breach of contract, violations of Chapters 541 and 542 of the Texas Insurance Code, breach of the duty of good faith and fair dealing, fraud, and conspiracy to commit fraud. *Id.*

Through the instant Motion, Covington presents evidence that Plaintiffs accepted settlement of the policy claim through the public adjusting company hired to represent them, and argues that principles of quasi-estoppel, agent authority, and ratification require summary judgment on Plaintiffs' claims that Covington breached the policy and engaged in bad faith and unfair settlement practices. (Dkt. No. 18). Covington also submits that Plaintiffs have no evidence to support their extra-contractual claims. *Id.* Upon consideration of the Motion and the parties' responsive briefing (Dkt. Nos. 20, 21), in light of the relevant law, the Court finds that the Motion must be granted for the following reasons.

## II.    Standard of Review

A district court must grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the lawsuit under the governing law, and is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party moving for summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings and materials in the record, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a), (c). Where the movant bears the burden of proof because it is asserting an affirmative defense, it must establish "'beyond peradventure *all* of the essential elements of the…defense to warrant judgment in [its] favor.'" *Chaplin v. NationsCredit Corp.*,

307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)) (emphasis in original). Once the moving party carries its burden, the burden shifts to the nonmovant to go beyond the pleadings and provide specific facts showing the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(c). In conducting its review of the summary judgment record, the court "may not make credibility determinations or weigh the evidence" and must resolve doubts and reasonable inferences regarding the facts in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255; *Dean v. City of Shreveport*, 438 F.3d 448, 454 (5th Cir. 2006). However, the nonmovant cannot satisfy its burden with "conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010); *see also Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

## III.   Summary Judgment Evidence

### A.   Overview

In support of its Motion, Covington presents evidence that is largely uncontested; as discussed more fully *infra*, Plaintiffs lodge only a hearsay objection to one of the documents submitted. (Dkt. Nos. 18, 20). This evidence establishes that on May 3, 2015, Mr. De Anda entered into a written contract retaining Worldwide Public Adjusters, LLC ("WWPA") as his "exclusive consultant and/or agent…in pursuit of any and all claims" under the policy with Covington "for the damages and/or the loss that resulted from the [March 26, 2015]

occurrence/covered peril, and the [610 W. 3rd St.] loss address." (Dkt. No. 18, Exhs. A-1, C).[2] In a letter dated May 22, 2015, WWPA provided notice to Covington of its representation of Mr. De Anda, stating that "[t]his notice letter includes the assignment of insurance benefits" and asking that Covington "add WWPA as an additional/co payee to any and all [policy] proceeds and…forward such proceeds to WWPA." (*Id.*, Exhs. A-1, D). On July 2, 2015, Covington issued a check payable to Plaintiffs and WWPA, in the amount of $19,887.57, "IN PAYMENT FOR Hail damage to roofs for buildings 1 & 2." (*Id.*, Exh. A). On August 4, 2015, Plaintiffs and WWPA endorsed and deposited the check. *Id.*

In a letter dated November 20, 2015 and addressed to Plaintiffs, Wheeler DeFusco and Associates ("Wheeler DeFusco") identified itself as the independent adjusting company retained by Covington to investigate Plaintiffs' claim under the policy, noting the loss location as 610 W. 3rd St. in Mission. (*Id.*, Exhs B-1, E). The letter asked Plaintiffs to "[p]lease note that we have left multiple messages for your public adjuster to contact us concerning the claim," and "to please have your public adjuster…contact us" within 15 days or "we will assume that you are no longer pursuing the claim and our claim file will close." (*Id.*, Exh. E). On December 1, 2015, Wheeler DeFusco received a letter from WWPA via facsimile, stating, "[P]er Mr. DeAnda, he has stated that he is content with the previous assessment of his claim." (*Id.*, Exhs. B, B-1). Therefore, "the claim has been closed [with] WWPA" and "[t]his concludes our representation of [Plaintiffs] for address 610 W. 3rd[.]" *Id.* Covington asserts, and Plaintiffs offer no argument or evidence to dispute, that "[o]ne year and six months passed without incident, i.e. Plaintiffs were completely silent with regard to the claim and its finalization," until Plaintiffs filed this suit on May 4, 2017. (Dkt. No. 18; *see* Dkt. No. 20).

---

[2] Evidence attached by Covington to its Motion and response to the Court's minute entry reflect that it received Plaintiffs' notice of loss shortly thereafter, around May 5, 2015. (Dkt. No. 18, Exh. E; Dkt. No. 27).

**B.**     **Plaintiffs' Hearsay Objection to December 1, 2015 Letter**

Plaintiffs' response to Covington's Motion attaches no evidence, but asks the Court to disregard the statement in WWPA's December 1, 2015 letter describing Mr. De Anda as "content" as inadmissible hearsay offered "to support [Covington's] contention that Plaintiff's claim was resolved."  (Dkt. No. 20 at § IV(C)); *see* FED. R. EVID. 801(c) (defining hearsay as out-of-court statement offered in evidence "to prove the truth of the matter asserted in the statement"), 802 (hearsay not admissible unless federal statute, Federal Rules of Evidence, or other rules prescribed by Supreme Court provide otherwise).  However, the Federal Rules of Evidence except from the definition of hearsay a "statement…offered against an opposing party" that was made "by the party in an individual or representative capacity," "by a person whom the party authorized to make a statement on the subject," or "by the party's agent…on a matter within the scope of that relationship and while it existed[.]"  FED. R. EVID. 801(d)(2)(A), (C), (D); *see* (Dkt. No. 21 at ¶ 2).  The Court finds that the statement by WWPA as Plaintiffs' undisputed representative and agent "with the authority to handle their [policy] claim" falls within this exception, and therefore the Court may consider it in ruling on the Motion for Summary Judgment.  (Dkt. No. 20 at § IV(B)).  Moreover, to the extent that Covington's arguments in support of summary judgment require the Court to consider the statement not for its truth, but for the effect it had on Covington, it is not hearsay.

**C.**     **Responses to Court's Minute Entry**

By minute entry dated March 9, 2018, in view of Plaintiffs' pleaded allegations of damages to properties located at two addresses, and summary judgment evidence identifying 610 W. 3rd St. as the loss address, the Court directed the parties to advise of the status of the dispute regarding the 300 N. Nicolson Ave. address.  (Dkt. No. 24).  Although Covington's response

takes the position that the Nicolson Ave. address is not part of this litigation, Plaintiffs' response explains that 610 W. 3rd St. encompasses three buildings located at the corner of 3rd St. and Nicolson Ave., that the Hidalgo County Appraisal District treats the lot at this corner as 610 W. 3rd St., and that Covington's initial adjuster's report dated May 25, 2015 did the same—that is, the attached report reflects the loss location as 610 W. 3rd St., while also reflecting an investigation of three "premises," two located at 610 W. 3rd and one at 300 N. Nicolson Ave. (Dkt. Nos. 27, 28; Dkt. No. 28, Exhs. A-C).  Even accepting Plaintiffs' position, it does not alter the summary judgment analysis, as the evidence on which the Motion turns references the 610 W. 3rd St. loss address, alleged by Plaintiffs to encompass all three premises.

## IV.    Analysis

### A.    Quasi-Estoppel

Covington's Motion first asserts that "Plaintiffs accepted settlement benefits, and thus they are estopped from their claims" in this lawsuit.  (Dkt. No. 18 at § IV).  In support of this argument, Covington appeals to principles of quasi-estoppel set forth in *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857 (Tex. 2000): that this doctrine "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken," and "applies when it would be unconscionable to allow a person to maintain a position inconsistent with the one to which he acquiesced, or from which he accepted a benefit."  (*Id.* at § IV(A), Tab 5); *Lopez*, 22 S.W.3d at 864 (citing *Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 240 (Tex. App.-Corpus Christi 1994, writ denied)).  Plaintiffs correctly respond that in *Lopez*, the Texas Supreme Court concluded that the defendant was *not* entitled to summary judgment on certain of the plaintiffs' extra-contractual claims, and appeal to the Court's reasoning as a basis for rejecting Covington's argument in this case.  (Dkt. No. 20 at ¶¶ 11-14); *see Lopez*, 22 S.W.3d at

863-64.

*Lopez* involved the plaintiffs' challenge to the defendant law firm's charging of a 5% fee (in addition to a 40% contingency fee) in the event the plaintiffs' case was "appealed to a higher court," where the only action taken prior to settlement was the opposing parties' initiation of the appellate process by filing a cash bond in lieu of a cost bond.  *See Lopez*, 22 S.W.3d at 859-60. The Texas Supreme Court construed the contract language in the law firm's favor, and therefore concluded that the defendant was entitled to summary judgment on the plaintiffs' breach of contract and breach of fiduciary duty claims, the latter of which was grounded solely on the theory that the law firm breached its contract.  *Id.* at 860-62.  However, the Court rejected the law firm's appeal to the defenses of accord and satisfaction and quasi-estoppel on the plaintiffs' fraud, negligence, and DTPA claims, reasoning that in order to prevail on the former defense, the law firm "was required to present summary judgment evidence that the [plaintiffs] disputed the fee and specifically and intentionally agreed to relinquish any claims they might have had against [the defendant] for its alleged overcharge."  *Id.* at 863.  Since no evidence existed that the plaintiffs disputed the additional 5% fee at the time they accepted the settlement, the defendant could not make this showing.  *Id.*  The Court then held that "[f]or the reasons considered in connection with the accord and satisfaction defense, the [plaintiffs'] initial acceptance of a lesser portion of the settlement is not inconsistent with their later assertion that they were entitled to more," and therefore the law firm was "not entitled to summary judgment based upon its acceptance of benefits [i.e. quasi-estoppel] defense."  *Id.* at 864.

Plaintiffs argue that although Covington "submitted a copy of the endorsed check as support for their contention that Plaintiffs discharged their right to file suit," "acceptance of the initial claims payment, without an intentional relinquishment of rights, will not support a claim

for quasi-estoppel." (Dkt. No. 20 at ¶ 14). However, the record also contains uncontested evidence that WWPA, as Mr. De Anda's "exclusive consultant and/or agent…in pursuit of any and all claims" under the policy for damages resulting from the March 26, 2015 occurrence and relating to the 610 W. 3rd St. loss address, represented to Covington's independent adjuster that Mr. De Anda was "content" with the initial assessment of the policy claim, and therefore the claim had been closed and WWPA had concluded its representation of Plaintiffs. In contrast to *Lopez*, in which the plaintiffs' "initial acceptance of a lesser portion of the settlement [was] not inconsistent with their later assertion that they were entitled to more," WWPA's letter constitutes an intentional relinquishment of Plaintiffs' right to additional benefits under the policy, and is inconsistent with Plaintiffs' causes of action dependent upon the assertion that they are entitled to more. *See* (Dkt. No. 18 at Tab 1); *Cantu Servs., Inc. v. Gen. Star Indem. Co.*, 2003 WL 22211544, at \*2-4 (Tex. App.–Ft. Worth Sept. 25, 2003, no pet.) (distinguishing from *Lopez* and extending defense of quasi-estoppel to context of plaintiff's acceptance of payment under commercial property insurance policy with requisite knowledge that payment excluded compensation for hail damage for which plaintiff later sued).

## B.    Agent Authority and Ratification

To the extent that the defense of quasi-estoppel does not extend to Plaintiffs' causes of action, Covington also asserts its entitlement to summary judgment by appealing to principles of agency authority and ratification. (Dkt. No. 18 at § IV(B)). In doing so, Covington relies on *Toonen v. United Servs. Auto Ass'n*, 935 S.W.2d 937 (Tex. App.-San Antonio 1996, no pet.), *abrogated on other grounds by USAA Tex. Lloyds Co. v. Menchaca*, 2017 WL 1311752, at \*5 n.13 (Tex. Apr. 7, 2017)), and Plaintiffs respond by attempting to distinguish it. (*Id.* at § IV(B), Tab 8; Dkt. No. 20 at ¶ 15). In that case, the plaintiff/insured reported a claim to the

defendant/insurer for damage to her roof from a hail storm.  *Toonen*, 935 S.W.2d at 938.  During the inspection stage of the claim process, the plaintiff hired an adjusting firm, Jansen & Co., "to represent her in handling [her] claim" and "to adjust her loss and deal with [the insurer] in attempting to resolve this matter[.]"  *Id.* at 938-39.  Thus, the insurer reported its finding of no storm damage to Jansen & Co.., which then advised in writing that the plaintiff had appointed it as appraiser.  *Id.* at 939.  The contractual appraisal process commenced and the appraisers agreed upon an award, which was then tendered to the plaintiff.  *Id.*[3]  Although as a general rule in Texas, "an appraisal award made pursuant to an insurance policy is binding and enforceable," the plaintiff filed suit against the insurer and opposed summary judgment on her breach of contract and bad faith claims on the asserted basis that she did not authorize Jansen & Co. to engage in the appraisal process on her behalf.  *Id.* at 939-40.  On appeal of the trial court's order granting summary judgment to the defendant, the appellate court characterized the asserted lack of authority as being "in the nature of [an] affirmative defense[ ]," and determined that the plaintiff was not entitled to it.  *Id.* at 940.  The court observed that under Texas law, an agent's authority to act for its principal may be demonstrated in any one of three ways: (1) express actual authority, which "exists where the principal makes it clear to the agent that he wants the act in question done"; (2) implied actual authority, which arises when "appearances justify a finding that in some manner the agent was authorized to do what he did"; and (3) apparent authority, which "is a form of estoppel where a third party relies on conduct of the principal which would lead a reasonably prudent person to believe the agent had authority to act."  *Id.* at 941 (quoting *Ins. Co. of N. Am. v. Morris*, 928 S.W.2d 133, 143-44 (Tex. App.-Houston [14th Dist.] 1996, writ

---

[3]  The plaintiff hired an attorney during the appraisal process, and argued to the appellate court that she would not have done so "if an agreement had already been reached regarding [the policy] claim," but as noted *infra*, the court only found relevant that the plaintiff and her attorney were "completely silent" upon receiving notice of the appraisal award.  *Toonen*, 935 S.W.2d at 939, 941.

granted), *aff'd in part and rev'd in part on other grounds*, 981 S.W.2d 667 (Tex. 1998)).[4]

Although the court found that the defendant had failed to carry its summary judgment burden of

establishing express actual authority, it concluded that the plaintiff had failed to raise a fact issue

on whether Jansen & Co. was authorized by implied actual authority or apparent authority to

invoke the appraisal process, and on that basis rejected the plaintiff's challenge to summary

judgment on her breach of contract claim. *Id.* at 941. In so holding, the court found relevant

that: (1) the plaintiff admitted that she hired Jansen & Co. to adjust her loss and deal with the

defendant in resolving the matter; and (2) the plaintiff made no effort to controvert the stated

belief of the defendant that Jansen & Co. had the authority to act on the plaintiff's behalf and

perform any and all acts relating to her claim, or to explain Jansen & Co.'s invocation of and

participation in the appraisal process. *Id.* The court also found relevant that the plaintiff and her

attorney hired during the appraisal process were "completely silent" when given notice of the

appraisal process and award—that is, until the summary judgment response—citing to case law

establishing that a principal can ratify her agent's unauthorized acts by failing to repudiate those

acts after acquiring actual or constructive knowledge of them. *Id.* (citing *Land Title Co. of

Dallas v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980)).

   Plaintiffs oppose Covington's appeal to principles of agency authority on the sole basis

that "the appraisal provision was not invoked in the case at bar and thus the holding of *Toonen* is

not binding, nor persuasive authority on this court." (Dkt. No. 20 at ¶ 15).[5]  However, the fact

that this case does not involve lack of authority as an affirmative defense to the validity of an

appraisal award does not preclude application of principles of agent authority and ratification as

---

[4]  The apparent authority form of estoppel differs from quasi-estoppel, which does not require a showing of detrimental reliance. *Cantu Servs.*, 2003 WL 22211544, at *3.

[5]  Plaintiffs' response does not specifically address Covington's and *Toonen*'s appeal to the defense of ratification. *See* (Dkt. No. 20).

defenses to liability for breach of an insurance policy; in fact, in holding that the *defendant* had failed to carry its summary judgment burden to show express actual authority, *Toonen* allows for this application. Like the plaintiff in *Toonen*, Plaintiffs here admit that they "provided [WWPA] with the authority to handle their claim," and aside from lodging an unsuccessful hearsay objection to the content of WWPA's December 1, 2015 letter, they do not dispute Covington's receipt of that letter representing Mr. De Anda's contentment with the initial assessment of the claim and that the claim was therefore complete and the file closed. (Dkt. No. 20 at § IV(B)). Also like the plaintiff in *Toonen*, Plaintiffs were otherwise silent on their position with respect to Covington's tendered payment until they filed suit a year and half later. At the very least, Covington has met its burden to establish WWPA's implied actual authority or apparent authority to accept the initial assessment as full payment under the policy, and therefore Plaintiffs cannot prevail on their claim that Covington breached the policy by failing to pay more.

## C.    Extra-Contractual Claims

Finally, Covington moves for summary judgment on Plaintiffs' extra-contractual claims on the following grounds: (1) in the absence of any breach of contract, Plaintiffs have no claim for breach of the duty of good faith and fair dealing or unfair settlement practices;[6] and (2) no

---

[6] As Covington points out, Plaintiffs' pleading alleges that Covington engaged in the following unfair settlement practices proscribed by Chapter 541 of the Texas Insurance Code:

(1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;

(2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of:

(A) a claim with respect to which the insurer's liability has become reasonably clear;
…

(3) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

evidence exists to support Plaintiffs' extra-contractual claims.  (Dkt. No. 18 at ¶ IV(B)).  As the court observed in *Toonen*, the general rule in Texas is that "an insured does not have a bad faith claim in the absence of a breach of contract by the insurer," and Plaintiffs offer no argument or evidence to bring this case within any exception to that rule.  *Toonen*, 935 S.W.2d at 941; *see* (Dkt. No. 20).  The Court is also inclined to agree with Covington that Plaintiffs cannot recover for unfair settlement practices where evidence establishes that they accepted settlement of their claim under the policy in a manner sufficient to invoke the above-discussed defenses.  Moreover, Plaintiffs offer no argument or evidence to dispute Covington's second asserted basis for summary judgment on their extra-contractual claims, and in fact, the record is undisputed that Covington investigated the policy claim and tendered payment on the claim within two months of the notice of loss.  In the absence of any evidentiary basis for discerning a fact issue on Plaintiffs' claims that Covington committed unfair settlement practices and prompt payment violations under Chapter 541 and 542 of the Texas Insurance Code, or engaged in or conspired to commit fraud, the Court finds that Covington is entitled to summary judgment on Plaintiffs' extra-contractual causes of action against it.

## IV.    Conclusion

For the foregoing reasons, the Court hereby **ORDERS** that Covington's Motion for

---

(4) failing within a reasonable time to:

    (A) affirm or deny coverage of a claim to a policyholder; or

    (B) submit a reservation of rights to a policyholder; [and]

…

(7) refusing to pay a claim without conducting a reasonable investigation with respect to the claim[.]

TEX. INS. CODE § 541.060(a); (Dkt. No. 1-3, Exh. C-1 at ¶¶ 55-59).

Summary Judgment is **GRANTED**.   The Court will enter a separate, final judgment in accordance with this Order.

      SO ORDERED this 11th day of April, 2018, at McAllen, Texas.

Randy Crane
United States District Judge